BRITT TRUCKING COMPANY v. RINGGOLD.

4-7827 192 S. W. 2d 532

Opinion delivered February 18, 1946.

Fred A. Isgrig and McRae & Tompkins, for appellant.

J. H. Lookadoo, for appellee.

SMITH, J. This litigation arose out of a collision between an automobile and a truck, and, as is usual in such cases, the driver of each vehicle excuses himself of negligence and blamed the driver of the other vehicle for the collision.

On the afternoon of November 15, 1944, J. H. Ringgold was driving a 1937 model automobile along highway 67, about two miles north of Gurdon. He was a tie inspector, and was on his way to inspect certain ties stacked along the Womble Branch of the Missouri Pacific Railroad, and to reach these ties he had to turn off highway 67 to the left. There was no one in the car with him. Britt Trucking Company of Lamesa, Texas, owned and operated a truck, which at the time of the collision was being driven north along highway 67 by D. W. Hornbeck. In the truck with Hornbeck was C. T. Isaacs of Lamesa, Texas.

According to Ringgold, he began to slacken the speed of the automobile as he approached the place where he was to turn off highway 67, and had been holding his arm horizontally out of the window of his car, while he traveled a distance of about 140 feet, but during all this time his car was traveling on the right hand side of the highway, and just before he reached the place where he was to turn off the highway, his car was struck from the

rear by the truck, and was sideswiped, and badly damaged, and he himself, sustained severe personal injury. Suit for $3,000 was brought to recover compensation for the car damage, and the personal injury, and upon the trial, Ringgold recovered judgment for $3,000, the exact amount sued for. The verdict of the jury, upon which the judgment was pronounced, from which is this appeal, fixed the damages to the car at $250, and allowed $2,750 for the personal injury.

Ringgold testified as follows: ". . . when I got 10 or 15 feet from where I intended to turn off, this truck drove up behind me and hit the left rear bumper of the car and knocked the car to the right and this slap behind it bent the bumper in and bent the fender, the rear fender on the left hand side of the car—it bent it and come up the running board and knocked it off and dented the door in and knocked two holes in the body between the hood and the door and knocked the front fender off and bent the wheels all down and it seemed to me like the front bumper of the car hung on the truck some way or other. When this truck hit me, it knocked me and jerked me, and when it stopped, it hit me the second time. The first time he hit me in the rear of the car, it knocked it up a piece because he was going faster than I was," and that the truck hung on the front bumper of his car and pulled it over, and the car was carried to the left across the highway and the truck, after becoming disengaged, continued across the highway, ran into a ditch, and ran over the adjacent railroad track and into a concrete post, which was knocked down.

The driver of the truck, and his companion riding with him in the truck, both testified that they were trailing the car when, without giving any signal of his intention to do so, the driver of the car turned it to the left off the highway, and the collision became inevitable and unavoidable, that to avoid striking the car "broadside" the truck was turned so sharply to the left that it ran into the ditch.

The cause was submitted under instructions of which no complaint is made, except that appellants say that a

verdict should have been directed in their favor, as the verdict of the jury is contrary to the physical facts disclosed by the testimony.

This contention is based upon the following testimony. Two brothers, one 18 and the other 13 years of age, were engaged in stacking wood on the side of the highway, and they went at once to the scene of the collision. These two boys, and both Hornbeck and Isaacs, testified that the car was standing upright on the left hand side of the road, off the concrete, and that the window of the door on the left hand side was up. If this testimony is true, Ringgold could not have given the signal which he testified that he did give, of his intention to turn left off the highway. Hornbeck and Isaacs testified that no such signal was given, and that had it been given the collision would not have occurred.

The court correctly charged the jury "That it was plaintiff's duty, under the Arkansas traffic law, before making a left turn, to extend his hand and arm, and to keep the same extended during the last 100 feet traveled by his car before turning, and that the burden of proof was upon him to show that he had complied with this law. This requirement is imposed by paragraph (b) of § 6725, and § 6727, Pope's Digest."

The chief insistence for the reversal of the judgment is that the physical facts show that this signal was not given and could not have been given for the reason that the window of the door on the left side of the car, where the driver sat, was up after the collision occurred, and if it were the signal could not have been given. This, of course, is a physical fact, which no testimony could contradict. Hornbeck testified that after the collision he undertook to lower the window, but was unable to do so, because the door was sprung.

Ringgold testified that the collision addled him, and that he has a very hazy and indistinct recollection of what he did for several hours thereafter; that he has no recollection of having lowered the window, but he testified that when he returned to the scene of the collision on the

following day, to get his car, he found the window down, and that the seat of the car was wet, showing that the window had been down for some time.

The jury might, therefore, have found, and evidently did find, that it was not a physical impossibility that Ringgold gave the signal as he testified he did do. If the signal was given for the time and in the manner testified by Ringgold, it was the duty of the driver of the truck to have observed it, and to have regulated his speed accordingly. We are unable therefore to say, as a matter of law, that a verdict should have been directed in favor of the defendants.

It is insisted that the verdict is excessive, and while it is very liberal, we are not able to say that it is not sustained by substantial testimony. After the collision, Ringgold caught a car and returned to Gurdon to see, not a doctor, but a lawyer, and he did not see the doctor until the following day.

The doctor testified that he found Ringgold's back and neck bruised and swollen, and a bruise on his left side about the tenth rib, which he thought was fractured, although he did not take an X-ray picture; that he strapped Ringgold's side, and attended Ringgold twice that week, and twice a week for three weeks, and then once a week for a couple of months, altogether about eight or ten times, and that his bill for his services amounted to $75. The doctor further testified that at first he gave Ringgold sedatives, on account of the pain which he suffered, and to enable him to sleep; that Ringgold had, even yet, a stiff neck and back, and that in his opinion, Ringgold would never completely recover on account of his age. This doctor also testified that Ringgold ". . . can't get down without going to his knees, and that Ringgold's neck is still swollen and very stiff," and that "I have tried to catch him when he was not noticing to see if his neck would turn without his body."

Ringgold admitted that he was now earning a salary as great as that he was being paid before the injury, but testified that he had no assurance of the permanency of

the employment, and that he would be unable to perform any work which required him to do any lifting or bending.

A Dr. Townsend, whose competency was admitted, examined Ringgold and made X-ray pictures of him, and was unable to find any evidence of an injury, and testified that the conditions of which Ringgold complained were all subjective, that is, that there was no visible evidence of any condition showing that an injury had been sustained. He admitted, however, that many persons suffer from aches and pains of which there is no visible evidence. This examination was made April 22nd, following the collision, which had occurred in the preceding November, and was made to enable the doctor to testify at the trial.

The jury allowed $2,750 for the personal injury and we are unable to say that the testimony is not sufficient to support that recovery. Damage to the car was assessed at $250, and as to this but little need be said. Ringgold testified that he had been offered $800 for the car before the collision, and that it was not worth more than $250 after the collision, and that he would take that sum for the car. He testified that he had certain work done on the car, as to the cost of which he was very evasive. But he testified that he had a reputable mechanic employed by the local Chevrolet Company to estimate the cost of repairs, which the mechanic placed at from three to four hundred dollars.

Upon the whole case we find no error, and the judgment must, therefore, be affirmed.